UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.: 17-cr-00022 (RBW)** |
| v. | : | |
| **TAKISHA BROWN DORSEY,** | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. The United States recommends that this Court sentence the Defendant, Takisha Brown Dorsey, to 16 months of incarceration; that this Court order restitution in an amount no less than $183,590.53; that this Court order forfeiture in the amount of $183,590.53; and that this Court impose a three-year period of supervised release. In support thereof, the United States respectfully states the following:

**Background**

1. The D.C. Department of Human Services Youth Rehabilitation Services ("the DYRS") is responsible for supervision, custody, and care of youth charged with a delinquent act in the District of Columbia. The agency provides comprehensive support services to committed youth, both in its secure facilities and within the community.

2. Correctional officers employed by the DYRS serve under the umbrella of the Fraternal Order of Police, Lodge 1, Washington, D.C. ("the FOP"). The FOP is comprised of members from 114 different law enforcement agencies and civilian associate members.

3. The FOP-DYRS Union ("the Union") is made up of approximately 240 members

1

who pay dues in the amount of $17.50 per pay check. The dues are generally used to pay for legal representation for Union members. The Union bylaws outline authorized uses of union funds, and require an audit of funds, at minimum, once per year.

**Conduct**

4. Between on or about January 2012 and on or about December 2015, Defendant Takisha Brown Dorsey devised and intended to devise a scheme to defraud the Union, and to obtain money from the Union's bank accounts, by means of materially false and fraudulent pretenses, representations and promises in the approximate amount of $183,590.53.

**Executions of the Scheme**

5. Defendant worked as a correctional officer for the DYRS, and was elected and served as the Chairperson of the Union from January 2012 through December 2015. In that capacity, Defendant Dorsey had access to Union funds and was authorized to expend Union funds in accordance with Union bylaws.

6. At the beginning of Defendant's tenure as Chairperson, she provided a financial update showing a $41,000 balance in the Union's savings account and an $8,100 balance in the checking account. After that January 12, 2012 report, Defendant did not provide any additional financial reports to the Union, and during Brown's tenure as Chairperson, there was never an audit performed.

7. The Union bylaws, for security reasons, required two names to be on the bank account at Bank of America and that all checks drafted on the Union's account have two signatures. Usually, all checks were signed by the Chairperson and the Treasurer. Although the Union elected a Treasurer in 2013, the Treasurer never assumed any financial responsibilities.

8. In 2014, Defendant removed the safeguard requiring a second signature on all Union

checks, making herself the only required signatory. Defendant was the only person who had an ATM card associated with the Union's bank account, the only person who had access to the Union's bank account, and the only person who had total control of the Union's finances.

9. On November 24, 2015, the Union took a vote of no confidence in Defendant, and on December 7, 2015, members of the Union's executive board visited Bank of America to inquire about the Union's finances. The Union's bank account statement showed an available balance of $277.

10. During January 2015 to December 2015, member dues were deposited in the account in the amount of $106,200. From April 2013 through December 2015, Defendant withdrew, debited, or transferred approximately $183,590.53 from the Union's bank account for her personal use or for deposit into her personal account.

11. In December 2015, Defendant resigned as Chairperson of the Union. At the time Defendant resigned, the Union was approximately $92,000 in debt.

12. A review of Defendant's bank records indicated that during the period she fraudulently obtained funds from the Union, she used the fraudulent funds to pay for various personal expenses including, but not limited to, travel, shopping, and restaurants.

13. In total, Defendant obtained $183,590.53 in unauthorized payments from the Union through this scheme, which Defendant used for her own personal expenses and benefit.

## STATUTORY PENALTIES

14. In violation of 18 U.S.C. § 1343, Defendant faces a maximum sentence of 20 years of imprisonment; a fine of up to $250,000; a term of supervised release of not more than three years; mandatory restitution under 18 U.S.C. § 3663A ; an obligation to pay any applicable interest or penalties on fines and restitution not timely made; and a $100 special assessment.

## SENTENCING GUIDELINES

15.     According to United States Sentencing Commission, <u>Guidelines Manual</u>, 2015 ed. (hereinafter "Sentencing Guidelines" or "U.S.S.G.") the Defendant's base offense level is 7. The base offense level is increased by 10 points pursuant to 2B1.1(b)(1)(F) because the amount is more than $150,000. The Defendant accepts responsibility for her conduct underlying the charges for which she has pleaded guilty. In light of the Defendant's timely notice to the government of her intention to plead guilty, the government requests that the Defendant receive a three-point adjustment for acceptance of responsibility. <u>See</u> U.S.S.G. §3E1.1(a). The PSR correctly calculates the Defendant's criminal history score as zero, and her criminal history category as I. <u>See</u> PSR ¶ 46. The Guideline range for a total of 14 points, category I, is 15 to 21 months of imprisonment. PSR ¶ 90.

## RESTITUTION AND FORFEITURE

16.     The Mandatory Victims Restitution Act ("MVRA"), <u>18 U.S.C. § 3663A</u>, mandates restitution in a fraud case like this where "an identifiable victim or victims has suffered a ... pecuniary loss." <u>18 U.S.C. § 3663A(c)(1)(A)(ii)-(c)(1)(B)</u>. Such recovery may include, *inter alia,* "necessary ... other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." <u>18 U.S.C. § 3663A(b)(4)</u>. The "purpose of the MVRA is essentially compensatory: to restore a victim, to the extent money can do so, to the position [the victim] occupied before sustaining injury." *United States v. Fair,* 699 F.3d 508, 512 (D.C. Cir. 2012) (internal quotations and citation omitted). "The proper amount of restitution is the amount wrongfully taken by the defendant." *United States v. Sapoznik,* 161 F.3d 1117, 1121 (7th Cir. 1998).

17.     In the plea agreement, Defendant agreed that "[a]part from the determination of

mandatory restitution," she would "pay restitution in the amount of $183,590.53." (Plea Agreement at 8).

18. As part of the plea agreement, the Defendant consented to an order of forfeiture in the form of a money judgment of $183,590.53. (Plea Agreement at 9). Therefore, the United States respectfully requests that the Court impose a money judgment in the amount of $183,590.53.

## SENTENCING RECOMMENDATION

19. The government recommends that the Court sentence Defendant to 16 months of incarceration, that this Court order restitution of at least $183,590.53, and that this Court impose a three-year period of supervised release.

20. A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 128 S. Ct. 586, 596 (2007). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Id.* at 594, and are the "starting point and the initial benchmark," *Id.* at 596. The district court should next consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *Id.* at 596. Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

A. <u>Section 3553(a) Factors</u>

21. The Section 3553(a) factors include (1) "the nature and circumstances of the offense and the history and characteristics of the Defendant," (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the Defendant,

and to provide the Defendant with needed correctional treatment, (3) the Sentencing Guidelines and related Sentencing Commission policy statements, and (4) the need to avoid unwarranted sentence disparities.

1. **Section 3553(a)(1) The Extensive Nature and Circumstances of the Offense**

22.     Here, the nature and circumstances of the offense require incarceration: Defendant must be punished for this brazen theft and she must be deterred from committing similar crimes in the future. There are at least three aspects of Defendant's criminal conduct that make her conduct egregious: i) the betrayal of her Union member's trust; ii) the amount of the loss and extravagant nature of the theft; and iii) the measures Defendant took to cover up evidence of her crimes.

23.     The Defendant committed these multiple and continuing frauds while carefully maintaining a false image of a loyal and respected Union leader. Defendant continuously withdrew money from the Union accounts and deposited some of it into her personal bank account. The Union members trusted Defendant, and by trusting the Defendant so completely, the Defendant was able to continue her fraud for three years.

24.     Defendant's theft was not a one-time occurrence; she exhibited a pattern of brazen, premeditated conduct over almost the entirety of her tenure as Chairperson of the Union.

2. **3553(a)(2) Factors Support a Sentence that Reflect the Seriousness of the Offense and Provide Adequate Deterrence.**

25.     After considering the enormity of her scheme and the impact Defendant's scheme had on the Union and its members, there can be little doubt that this conduct warrants a period of incarceration.

26.     A prison sentence of incarceration for Defendant will accomplish the relevant purposes of U.S.S.G. § 3553(a)(2); that is: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate

6

deterrence to criminal conduct[.]" For almost the entire time of her tenure as Chairperson of the Union, Defendant used the proceeds of the fraud to support her lifestyle. The proposed punishment in this case fits her serious crimes. Section 3553(a) is not limited to the necessary sentence to deter Defendant from engaging in further criminal conduct (specific deterrence), but also includes consideration of deterring other potential criminals from engaging in similar conduct (general deterrence). *See, e.g., United States v. Phinazee*, 515 F.3d 511, 515-16 (6th Cir. 2008) ("The plain language of the statute . . . also militates against limiting the authority of the court to specific deterrence. . . . We note that this conclusion comports with the longstanding and uncontroversial practice of considering general deterrence in sentencing."). From the standpoint of general deterrence, moreover, the proposed Guidelines sentence of incarceration will send a strong message to all who seek to defraud the people they work for that such acts will not be tolerated.

### 3. Section 3553(a)(1) History and Characteristics of the Defendant

27.     Another Section 3553(a)(1) factor that the Court must consider in fashioning an appropriate sentence is the history and characteristics of the Defendant. Defendant is 42 years old, and the primary caretaker of her mother. Defendant's mother advised the PSR writer that Defendant is her caretaker and the one who provides for her. PSR ¶ 53. Defendant advised the PSR writer that she was treated by a psychiatrist two years ago for approximately 18 months, but has not sought treatment since. PSR ¶ 61.

32.     The only mitigating factor for Defendant is the fact that she accepted responsibility and pleaded guilty immediately after being arrested. Defendant's credit for accepting responsibility is clearly reflected in the terms of the plea agreement.

### 4. Section 3553(a)(2)(C) Protecting the Public from Further Crimes

33.     Another factor for the Court to consider in fashioning an appropriate sentence

under Section 3553 is whether the defendant would commit further crimes in the future. While the Government acknowledges Defendant's early plea in the instant matter, after considering the nature and circumstances of this scheme and its effect on the Union, it is clear that a sentence of 16 months of incarceration is warranted and that such a sentence will both provide just punishment and also deter the Defendant from engaging in similar conduct in the future.

## CONCLUSION

A sentence of 16 months, along with a $183,590.53 forfeiture judgment, and three years of supervised release is a just punishment for the Defendant. The government has requested a sentence at the bottom end of Defendant's guideline range because she has accepted responsibility for her actions, and does not have a criminal history. We have, however recommended imprisonment due to the prolonged nature of the theft, and the extensive nature of Defendant's ongoing criminal actions with the Union. In light of the § 3553(a) factors, the United States respectfully recommends that Defendant be sentenced to 16 months incarceration and three years of supervised release. In addition, the government requests that the Court order Defendant to pay restitution and impose a forfeiture money judgment.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
D.C. Bar No. 415793

BY: _K. Briggs_
KENDRA D. BRIGGS
D.C. Bar No. 978769
Assistant United States Attorney
555 5th St. NW
Washington, D.C. 20001
202-252-7524
kendra.briggs@usdoj.gov