UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No.: 17-cr-00022 (RBW) |
| TAKISHA BROWN DORSEY | * | |
| Defendant | * | |

## **DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

COMES NOW the Defendant, TAKISHA BROWN DORSEY ("Ms. Brown"), by and through counsel, PETER S. FAYNE, and the law firm of ROSENBERG & FAYNE, L.L.P., who hereby submits the following memorandum in aid of sentencing. For the reasons contained below, the Defendant moves this Honorable Court to sentence the Defendant, in accordance with the United States Sentencing Guidelines and 18 U.S.C. § 3553, below the applicable guidelines range.

Since *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory, and sentencing courts have discretion to sentence defendants within the statutory range, regardless of whether the sentence falls within the Guidelines range or without. Sentencing discretion, however, is not unlimited, nor unguided. Congress has created a mandatory structure within which sentencing is to be conducted.

First, every sentence must be imposed to achieve the four congressionally mandated purposes of sentencing codified in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. §§ 3551, 3553(a). Section 3551 provides that a defendant found guilty of a federal offense "*shall be* sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case." *Id.* § 3551(a) (emphasis added). Similarly, § 3553(a) *requires* that a sentencing court "impose a sentence sufficient, but not greater than necessary, to

comply with the [four] purposes set forth in paragraph (2) of this subsection." The four purposes of sentencing are:

    1. *To punish* the defendant in light of "the seriousness of the offense," so as "to promote respect for the law" and "provide [a] just punishment";

    2. *To deter* both the defendant and others from "criminal conduct";

    3. *To incapacitate* the defendant and thus "protect the public from further crimes of the defendant"; and

    4. *To rehabilitate* the defendant with "needed educational or vocational training, medical care, or other correctional treatment."

18 U.S.C. § 3553(a)(2); *see also United States v. Shortt*, 485 F.3d 243, 247-49 (4th Cir. 2007).

Then, in determining the sentence that achieves these four purposes, the sentencing court must consider the seven factors identified in 18 U.S.C. § 3553(a)(1)-(7). These include, as relevant to this case, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant" as recommended by the Sentencing Guidelines. 18 U.S.C. §§ 3553(a)(1), 3553(a)(4)(A).

The procedure that a district court must follow under this structure is now well established. The district court begins "by correctly calculating the applicable Guidelines range." *Gall v. United States*, 128 S. Ct. 586, at 596 (2007); *see also Rita v. United States*, 551 U.S. 338, 351 (2007); *United States v. Evans*, 526 F.3d 155, 160 (4th Cir. 2008). But consideration of the Guidelines, which is but one of the seven factors listed in 18 U.S.C. § 3553(a), is only "the starting point and the initial benchmark." *Gall*, 128 S. Ct at 596; *Evans*, 526 F.3d at 160-61. The court "then consider[s] what sentence is appropriate for the individual defendant" in light of the four purposes of sentencing and the seven factors for achieving those purposes, "explaining any variance from [the Guidelines range] with reference to the [§ 3553(a) factors]." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009).

In selecting a sentence, the district court has substantial discretion, but the court must give the parties "an opportunity to argue for whatever sentence they deem appropriate," *Gall*, 128 S. Ct. at 596; *see also Rita*, 551 U.S. at 351, and thereafter "make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597; *Evans*, 526 F.3d at 161. The district court may sentence a defendant within or outside of the Guidelines range. But this process does not include according a presumption of reasonableness to a sentence calculated under the Sentencing Guidelines, and a district court's application of a presumption of reasonableness to a Guidelines sentence is error. *See Nelson*, 129 S. Ct. at 892; *United States v. Smith*, 566 F.3d 410, 414 (4th Cir. 2009).

I. **SENTENCING GUIDELINES**

Ms. Brown has pled guilty to one count of wire fraud under 18 U.S.C. § 1343 and to a related forfeiture allegation. For this single count, both parties have stipulated that the estimated offense level under the Federal Sentencing Guidelines is a total of 14, which includes a 2-level reduction pursuant to U.S.S.G § 3E1.1 An additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b) is appropriate for Ms. Brown taking responsibility for her actions and for giving timely notice of the plea. Ms. Brown has no criminal history, which makes her estimated guideline range from 15 months to 21 months in the first level of Zone D.

II. **SENTENCING FACTORS UNDER 18 U.S.C. § 3553**

While an appellate court may presume that the sentence within a properly calculated Guidelines range is reasonable during review, the sentencing court may not, in sentencing a defendant, rely on this presumption. *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007) (internal citations omitted); *see also United States v. Go*, 517 F.3d 216, 218 (4th Cir. 2008). Rather the sentencing court must "first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18

U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009) (per curiam).

As the Court is aware, the recommended sentence set forth in the Sentencing Guidelines is but one factor this Court should consider in determining an appropriate sentence. The Court should also consider the factors set forth in 18 U.S.C. Section 3553. As set forth below, these additional considerations provide a basis in this case for a sentence below the guidelines range.

    a.    **Nature and Circumstances of the Offense; History and Characteristics of Takisha Brown Dorsey**

Ms. Brown has agreed with and accepted the conduct described in the Statement of Offense as presented for her guilty plea. Ms. Brown has also provided the following statement (excerpted from Exhibit 1 – Letter from Takisha Brown):

> **This is a part of my life that hurts my heart everyday knowing I affected a union I all so once loved and worked very hard to build. I hurt my family and friends and now I stand here in front of you asking for the court forgiveness. I'm asking for another chance in society and I promise to make a better citizen again.**

Ms. Brown tries very hard to overcome a troubled past and a troubled background. During her childhood, both of her parents suffered from drug addictions. At the age of fourteen, she moved out of her parent's house along with her siblings to escape this dysfunction, staying with friends and family when space was available for them. At the age of fifteen, Ms. Brown and two of her siblings moved into her maternal aunt's house, until their aunt cruelly told the children that they were a burden.

At the age of sixteen, Ms. Brown was in a desperate situation to provide for her siblings, so she conducted sexual favors for men to keep food on their table. Additionally, tragically during Ms. Brown's childhood, her paternal uncle sexually abused her until she was able to cut off contact. Ms. Brown did what she could to provide for her siblings, and worked hard to break the cycle of drug addictions, homelessness, and abuse in her family.

Unfortunately, Ms. Brown also has struggled with mental illness, anemia, and chronic pain. She was diagnosed with having depression and anxiety in 2014. At this time in her life, Ms. Brown was dealing with more than just her addiction. After a ten-year relationship, Ms. Brown and her partner split in 2015. Soon after, Ms. Brown's father was diagnosed with lung cancer and passed away three weeks after that diagnosis. This was absolutely devastating to Ms. Brown, but she took the loss as a lesson in how she wanted to continue her life.

At this time, Ms. Brown served as the President of the Fraternal Order of Police ("FOP"). Unfortunately, Ms. Brown found herself having trouble falling asleep, so her doctor prescribed her sleeping pills, specifically Ambien, to which she became addicted. Recognizing that she needed with her addiction, in December of 2015, Ms. Brown checked herself into a rehabilitation facility at the Desert Hope Center in Nevada. Here Ms. Brown was able to get treatment for her addiction as well as her mental health issues, and to gain guidance with grieving her father's death (See Exhibit 2 – Desert Hope – Intake Report).

Ms. Brown entered this program as she sought to take responsibility for her own life and no longer be a victim to her challenging circumstances. Ms. Brown successfully completed the facility's 30-day detox program in January of 2016. (See Exhibit 3 – Desert Hope -Discharge Report)

      b.      **Need for the Sentence Imposed**

When determining the need for the sentence imposed, the court shall consider the seriousness of the offense, protection from the public from further crimes of the defendant, the need to promote respect for the law, and to provide just punishment. In this case, Ms. Brown is accepting responsibility for the one count of a nonviolent, financial offense and does not pose a violent threat to society. Further, Ms. Brown is no longer employed with the FOP, and there is no suggestion that Ms. Brown is likely to reoffend. Ms. Brown is aware of the seriousness of her

offense and has accepted full and complete responsibility as evidence by her acknowledgement of guilt and assisting authorities.

The need for restitution is also a factor in determining the need for the sentence imposed. If a primary concern in Ms. Brown's punishment is restitution, then she will have a greater ability to pay if she is employed. An extended period of incarceration will limit her ability to pay restitution not only in the short-term, but also in the long-term because her work skills will diminish over an extended period of unemployment.

      c.      **Kinds of Sentences Available**

Imprisonment is authorized for a violation of 18 U.S.C. § 1343; however, the Defendant believes for the reasons contained in this memorandum that a lengthy period of incarceration would not be an appropriate sentence. If the court finds otherwise, the Defendant alternatively asks the court to impose the least amount of time possible due to the unique dependence of her disabled mother, as discussed *infra*, whether it is below or on the lower end of her guideline range.

If the Court is inclined to impose some period of incarceration, the Defendant respectfully requests the Court to consider substituting it with home electronic detention and strict terms of supervised release.  The Defendant believes this option is more appropriate than an extended period of incarceration only because it allows the Court to impose conditions as they relate to the circumstances of the offense and the history and characteristics of the Defendant in addition to mandatory and discretionary statutory conditions. These conditions may include some or all of the following: (1) mental health evaluation and treatment; (2) financial disclosure and restrictions; (3) employment restrictions; (4) restitution; and (5) community service. The Defendant believes imposing this type of punishment allows her to accomplish rehabilitative goals, repay her debt to the community financially and through service, and allows her to care for her disabled mother.

### III. FACTORS THAT WARRANT DEPARTURE

A downward departure is well within the sentencing court's discretion and allows the court to consider factors before it which lie outside the "formulaic rigidity" of the guidelines. *United States v. Dominguez*, 296 F.3d 192, 195 (3rd Cir. 2002). Ms. Brown requests a downward departure pursuant to USSG § 5K2.0 for mitigating circumstances that were not adequately taken into consideration in her guideline calculation regarding the extraordinary situation involving the care of her disabled mother.

#### a. Legal Standard

Under USSG § 5H1.6, family ties and responsibilities are not ordinarily taken into consideration in determining a sentence. However, appellate courts have determined this implies "extraordinary" family circumstances do warrant departures. *United States v. Dyce*, 78 F.3d 610, 615 (D.C. Cir 1996). A district court's decision on what constitutes "extraordinary" family ties and responsibilities is entitled considerable respect on appeal. *Id.* Although it sounds somewhat simple and obvious, "extraordinary" means more than ordinary and even ordinary family ties and responsibilities are often great. *Id.* at 615. Thus "extraordinary" cases warranting departures are rare. *Id.* In determining what is "extraordinary", a district court should focus on the effects a sentence may have on innocent relatives of the defendant. *Id.* at 620.

Downward departures have been warranted for extraordinary family circumstances in the cases of "irreplaceable caretakers" of dependent children, elderly, and seriously ill family members where the departure functions to protect the dependents from the detriment of their caretaker's extended imprisonment. See *United States v. Leon*, 341 F.3d 928, 931 (9th Cir. 2003); *United States v. Haversat*, 22 F.3d 790, 797 (8th Cir. 1994). An irreplaceable caretaker is one where there exists no "feasible alternatives of care that are relatively comparable to what the defendant provides." *United States v. Periera*, 272 F.3d 76, 83 (1st Cir. 2001).

To the contrary, downward departures for extraordinary family circumstances have been overturned in the case of "non-essential caretakers." *Leon*, 341 F.3d at 932. The distinguishing factor between the two types of caretakers is whether they are the only person available to care for the dependent or whether other family members are available. *Id.* at 931-32 (citing cases); *cf. United States v. Sweeting*, 213 F.3d 95, 107 (3rd Cir. 2000) (denying downward departure for extraordinary family circumstances because there was nothing in the record to show that only the defendant could provide her child with the proper care for his substantial neurological impairment); *United States v. Archuleta*, 128 F.3d 1446, 1450 (10th Cir. 1997) (denying downward departure because the records failed to establish that other relatives of the defendant could not care for the dependents); *Dyce*, 78 F.3d at 617, 620 (denying departure for extraordinary family ties and responsibilities in part because defendant's children received the willing care of relatives). Therefore, special needs alone of a dependent do not warrant departure without the court's inquiry into the degree of those needs and the caretaker's replaceability in meeting those needs. *United States v. Dominguez*, 296 F.3d 192, 197 (3rd Cir. 2002).

In *United States v. Pearson*, a case similar to this one, the court found that sentencing warranted a departure from the guidelines when the defendant's parents were entirely dependent on the defendant for all of their caretaking, including household chores, doctor visits, and giving medication. 282 F. Supp. 2d 941, 943 (E.D. Wis. 2003). The defendant in *Pearson* had no recent criminal history and pled guilty to one count of bank larceny, which left her in Zone C of the Guidelines, having to serve at least half of her 10-16-month sentence in prison. *Id.* at 942. The *Pearson* court held that a departure of two levels was reasonable and appropriate in that case to allow the defendant to serve the punishment through both home confinement, probation, and community support meetings. *Id.* at 946-47; s*ee also Dominguez*, 296 F.3d 192 (holding that departure was within court's discretion because the defendant was not a danger to the community, had no criminal record, engaged only in improper financial transactions, and had

infirm, elderly parents who were fully dependent on her care); *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991) (approving a departure for defendant caring for disabled parent and grandparent).

        **b.**        **Ms. Brown is the Irreplaceable and Sole Caretaker of Her Physically Disabled Mother, Ethel Brown**

Ms. Brown's mother, Ethel Brown, is an elderly woman who is unable to conduct basic tasks to take care of herself. Ethel Brown was diagnosed just a few months ago in October of 2016, with "cervical myclopathy", which is a spinal disorder where her nerves do not function properly and she suffers repeated falls with arm and leg weakness. Ethel Brown endured necessary neurosurgery and was hospitalized until the following December of 2016. (See Exhibit 4 – Letter from Ethel Brown)

Dr. Elizabeth Bluhm has advised that Ethel Brown needs around the clock supervision to provide care including showering, cooking, bathing, getting dressed, grooming, paying bills, and tracheostomy care. (See Exhibit 5 – Letter from Dr. Bluhm) Dr. Bluhm stated specifically that "it is not safe for Mrs. [Ethel] Brown to be alone given her medical situation" and that Takisha Brown is the only available full-time caregiver and is performing essential services for her mother's health condition.  Since her mother's diagnosis and surgery, Ms. Brown has brought her mother to all her doctors' appointments and provided essential tracheostomy care and suctioning.  Further, Dr. Bluhm emphasizes that it is not safe for Mrs. Brown to be alone given her medical situation, as there have been more than six emergencies including falls, respiratory stridor, bleeding from tracheostomy, and increased secretions from the tracheostomy, each requiring immediate assistance and transportation to emergency care.  Simply put, it is dangerous to leave Ms. Brown's mother home alone.  To that end, Ms. Brown has established a daily routine that allows her to properly care for her mother.

Unfortunately, in January of 2017, Ms. Brown tore her Achilles, a painful injury for which her doctor prescribed Percocet (See Exhibit 6 – Letter from Elizabeth Bluhm, MD). Ms. Brown quickly realized that although the medicine reduced her severe pain, it also triggered a relapse of the addiction she worked hard to defeat. Ms. Brown continued to care for her mother without incident but in June of 2017, Ms. Brown enrolled herself in a 90-day outpatient detox and rehabilitation program at Kolmac Outpatient Recovery Centers in Silver Spring, Maryland (See Exhibit 7 – Letter from Emily Wigglesworth, LPC).

This program requires Ms. Brown to attend daily, three-hour counseling programs four (4) times a week. Ms. Brown brings her mother to the facility and periodically monitors her mother's needs during each three-hour period.  It should also be noted that Ms. Brown has been in Kolmac's Suboxone program which is assisting her with combating this addiction and weaning her off of oxycodone.

Furthermore, Ms. Brown specifically moved in with her mother to provide the specialized care that her mother needs, and there are no other family members able to do this. Shaka Brown (Ms. Brown's brother) is on active-duty status as a Sergeant in the United States Marine Corps (See Exhibit 8 – Letter from Shaka Brown), Shamika Brown, Ms. Brown's sister, lives in West Virginia (See Exhibit 9 – Letter from Shamika Brown), and Miracle Brown, Ms. Brown's other sister, lives in New York City (See Exhibit 10 – Letter from Miracle Brown). Ms. Brown's Aunt and Uncle, Albert and Denise Richardson, have witnessed the situation facing Ethel Brown, Denise's sister, and believe that Ms. Brown is the sole lifeline for her mother's care. (See Exhibit 11 – Letter from Albert and Denise Richardson).

The severe and dire medical issues facing Ms. Brown's mother on a daily basis clearly demonstrates that the incarceration of Ms. Brown would have a detrimental and rippling negative effect on her mother's life.

Considering the record as a whole, the defense would strongly assert that a variance in Ms. Brown's sentencing is appropriate. Like the defendant in *Pearson*, Ms. Brown is pleading guilty to one count of a nonviolent, financial offense. Like the defendant's parents in *Pearson*, Ethel Brown is unable to care for herself, and requires Ms. Brown's around the clock care to ensure her health and safety. Furthermore, Ms. Brown's conduct since her early admission of guilt to the government demonstrates that she has regained her respect for the law and that the likelihood that she will engage in further criminal conduct is very small.

Currently, Ms. Brown's guidelines put her at the very bottom end of Zone D. However, a three-level departure from an offense level of 14 to an offense level of 11 in Zone B, much like in *Pearson*, would allow Ms. Brown to serve her given sentence through home confinement, community services, probation, rehabilitation, or whichever combination this Court deems appropriate.  Under the unique circumstances presented in this case, Ms. Brown should be sentenced to a certain term of probation with a condition of home detention and location monitoring because such a sentence would be sufficient but not greater than necessary to fulfill the goals of sentencing.

## IV.   CONCLUSION

WHEREFORE, for all of the stated reasons and for such additional reasons offered at the sentencing hearing, Takisha Brown Dorsey, respectfully requests that this Honorable Court exercise its discretion to find that an appropriate sentence in this matter is one which sentences Ms. Brown to an Offense Level within Zone B of the guidelines, allowing her to serve her sentence in a way that she may continue caring for her disabled mother.

# CORRESPONDENCES IN AID OF SENTENCING
(List of Exhibits)

1. Letter from Takisha Brown
2. Desert Hope – Intake Report
3. Desert Hope – Discharge Report
4. Letter from Ethel Brown (Mother)
5. Letter from Dr. Elizabeth Bluhm (Treating Physician for Ethel Brown – Ms. Brown's mother)
6. Letter from Dr. Elizabeth Bluhm (Ms. Brown's Treating Physician for Achilles injury)
7. Letter from Emily Wigglesworth, LPC (Addictions Counselor at KOLMAC Outpatient Recovery Center)
8. Letter from Sergeant Shaka Brown (Brother)
9. Letter from Shamika Brown (Sister)
10. Letter from Miracle Brown (Sister)
11. Letter from Denise and Albert Richardson (Aunt and Uncle)
12. Letter from Jamar Moore (God-Brother)
13. Letter from Amalia Dixon (friend)
14. Letter from Jacqueline R. Wiggins-Taylor (friend)
15. Letter from Michelle Dent (friend)
16. Letter from Dominic Ray (co-worker/friend)
17. Letter from Maurice C. Shaw (supervisor)
18. Letter from Dr. Kathy K. Sutton Ed. D, LPC, MAC (co-worker)
19. Letter from Lakita Harris (co-worker)
20. Letter from Kendra N. White (co-worker)
21. Letter from Tawana Shorts (friend)
22. Letter from Ernestine Barrett (Aunt)
23. Letter from Akosua Kwakyewaa (co-worker/friend)

        Respectfully submitted,
        **ROSENBERG & FAYNE, L.L.P.**

*Peter S. Fayne*
_____
Peter S. Fayne
D.C. Bar No. 432832
5400 Kenilworth Avenue
Riverdale, MD 20737
(301) 864-2900
pfayne@rosenberg-fayne.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2017, a copy of the foregoing Motion was filed with the Clerk of the Court using the CM/ECF System which will send notification of this filing to all parties.

*Peter S. Fayne*
_____
Peter S. Fayne